This is Colston v. City of New York. All right, Mr. Greenberg, you're reserved three minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. Good morning, and may it please the Court. This Court has jurisdiction to reverse the improper modification of the consent judgment that occurred below in this case. Let's start with final judgment. So the order in this case is a judgment that applies to the entire class in Nunez. From now on, in any restriction that applies to the monitor, none of the inmates who fall under it can use the monitor's staff. That includes not just the ability to testify, but, for example, in the paragraph that follows, the ability to use them as experts, which is also not addressed in confidentiality order as well. So given that this order doesn't apply simply to Mr. Colston and, in fact, isn't actually about a subpoena, it's about the entire meaning of or the meaning of this consent judgment overall, it necessarily is a final judgment. I know, but it's not an appeal in that action. This is an appeal in the case that your client has, right? No, Your Honor. No. We filed as interested parties, but this is coming from Nunez v. City of New York, from Judge Swain's order, not Judge Clark's. I know, but Judge Swain filed that order in your case, right, the Colston case? No. No, Your Honor. He put it on the docket. I thought he did. No. No? I think that the order required the city's attorney in Colston to file it as an exhibit to a letter, but the order itself is in Nunez. You have a trial that's scheduled. Yes, Your Honor. Right? So you would agree with me, putting aside the issue that it's a consent judgment, but you would agree if a judge says, you know, you want to subpoena a trial witness, and the judge says, quash the subpoena, precludes you from putting on the witness, that would never, ever, ever be immediately appealable to this Court, right? You would have the ability to appeal at the end of the case. If you lose, you say, that was a misjudgment.     Well, Your Honor, I would say I'm not sure the answer to that question, since I don't think that's ever been addressed by this Court. However, there are functional differences between a discovery order, which is inherently It's never been addressed by this Court, I think, because nobody has ever tried it. And, and Judges exclude witnesses all the time, right? Sure. Judges exclude witnesses all the time, all the time. And nobody comes to this Court and says, I want an immediate appeal because my witness has been excluded. And that's, I understand that it's based upon an interpretation of a consent judgment, but I don't know that that changes the analysis. I, I actually think that it does, because this isn't about a subpoena. If you look at the order, the one-page order that's on appeal, it specifically is saying what is the, what restrictions apply to the monitor, apply to the monitor's staff equally. So that is, the last part of the order is, we, I don't give The appeal of the consent judgment itself, the law is, we don't have jurisdiction over that unless it's a blatant misinterpretation of that, right? No, Your Honor. That's correct if it's, if it's under the injunction provision of this. Right. Under a final judgment rule issue, it's not about whether it is blatantly wrong. So you're saying if it is a final judgment, then It's here. There's, in fact, under FRAP 4, if we had waited to do it, there, then we would have waived this point. So we had to do it now. Now, if Your Honor would like to discuss why it also falls under the injunction jurisdiction, I'm happy to explain that as well. But it is a final judgment. There's nothing more to be had, and it isn't a decision that applies solely to a trial subpoena. It applies to everybody. So if there are no further questions on that issue, I'll turn to the injunction part. As was being discussed in the prior case, with Tronics, you're talking about the difference between an issue of mixed case versus, of law and fact versus an issue of law. Here, we have an issue of law. It's the interpretation of a contract and is reviewed de novo. And, in fact, the city conceded that in their opposition brief. So the question is, is this wrong? And there's no way to interpret the consent judgment in the manner that the city and that Judge Swain below interpreted it. It's a modification. Because, first, it's defined — there is a defined term of the monitor, which is, in effect, the person who's appointed, which is Stephen J. Martin. And the bar here is the monitor shall not testify. So the only way that you can interpret this based on the interpretive direction canon is that Stephen J. Martin shall not testify or whoever is appointed after. That's not how Chief Judge Swain did it. She looked at the other provision regarding confidentiality limitations as the monitor applying to the staff, and she didn't interpret the testifying provision itself. She said that provision, therefore, makes the provision regarding the monitor applicable to the whole staff. That's what she did.  But that also does not work as an argument, in my opinion. It does not. I mean, she says the monitor staff should be subject to the same access rights and confidentiality limitations as the monitor. So there are two broad-based reasons why that's incorrect. So first is, under the confidentiality — actually, I'll start with the contractual interpretation point, which is, this Court has held, as is pretty black-letter law, that you have to interpret a contract with regard to the provisions around it as well. You can't take it just as a single line. The provision in full, which she never quoted, starts with, the monitor shall enter into an appropriate confidentiality agreement. It then follows that the monitor staff shall be subject to the access rights and confidentiality limitations. Pursuant to Chesapeake, that means that you have to look at the context, and you conclude that the confidentiality agreement is what is in reference here. In the confidentiality agreement, which is in the appendix — it was Exhibit 1 to the declaration below — it does — has no mention of the testimony. There's nothing in the — there is no section in the agreement that is — It doesn't say it will be subject to the confidentiality agreement. If it was that narrow, it would have specified simply the agreement. It talks about confidentiality limitations more generally. Why couldn't that be broader than the first sentence? They point out there's other limitations, such as that the monitor can't make any public statements that — so — Well, again, first, the reason why that wouldn't have worked is because you have the provision — the clause before it, the same access rights. You couldn't have done that. Second, there's a — the fact that you could skin the cat multiple different ways does not change the result that this is what that says. And also, as was pointed out, the things that we are going to be asking of Ms. Friedberg are all in the public record. And in the law, there's a very — Well, that would be true of the monitor also. The things that you would ask of the monitor would be in the public record. True, but that's why — The reports are inadmissible, and the testimony of the monitor is not permitted. Would it make any sense — would it make any sense to enter an order saying the reports are inadmissible, the monitor can testify, but we're going to let the deputy monitor do the same thing? Does that make any sense? Yes, Your Honor, two points.  So first, to answer your first — your question there, why, there are many reasons why, none of which can be found in — there's no reason that can be found in the record, so we're left with the agreement. But there are many reasons. For example, the monitor lives in Texas. Perhaps he didn't want to have to be doing depositions either flying up or doing trials flying up or having to do depositions by video. Perhaps it was that Mr. Martin is particularly persuasive. Who knows? We don't know and we can't find out because there's nothing in the record to support it. Now, to address your — to the other point of that is, exactly the reason why you can't say — You really think it was the monitor's traveling, it wasn't to promote cooperation with the monitor to get the most fulsome information for purposes of investigating this? You don't think that was the reason? Well, Your Honor, first, we do not know. And second, that is not the standard here. The standard is this is to be ruled on by the four corners of the agreement. One does not get to speculate as to why the provisions are in there, first, unless you find it ambiguous. And second, even if you found it ambiguous, there's nothing in the record to support it one way or another. But if I may, I just — may I address one other thing? So Your Honor's point that it's a confidentiality limitation and therefore — and that this testimony, one, was a confidentiality limitation. If that were the case, why would the provision be in there? It doesn't make sense. If it's a confidentiality limitation, it has to do something that addresses confidentiality. This doesn't address confidentiality. It addresses testimony. Okay. Thank you. We have three minutes of rebuttal here. Thank you, Your Honor. From the State. May it please the Court, Lauren O'Brien on behalf of the City of New York. I'm first going to address the two grounds for dismissal that we raised in our briefs. The first is that this appeal is moot in light of the fact that the only claim for which he was seeking this trial testimony has now been dismissed at summary judgment. So there is now no live claim for which he can seek trial testimony. He argues that he can get his claim reinstated, but relies really just on pure speculation, especially given the fact that the possibility of him bringing in this motion for his – I'm sorry, his opposition to the City's motion for summary judgment. And so this pure speculation is just not sufficient to support this Court's jurisdiction. So if he uses those grounds for a motion for reconsideration with respect to the Monell claim, that's not a possibility? So he does say that he plans to seek reconsideration of the claim or reinstatement of the claim if he were to win on appeal, but it's entirely speculative whether he will succeed in getting his claim reinstated. And the deputy monitor's testimony would have no relevance to the remaining claims? It's not that – you know, we don't discuss or dispute either way whether the deputy monitor's testimony would be relevant. Our point is just that he did not raise the – he did not attach any evidence or raise the possibility of using this testimony in support of his claim until after he filed his opposition to summary judgment. Because he didn't resist the motion for summary judgment on the grounds that a witness that might be able to testify and create material issues of fact had been withheld from him and that he was seeking that witness's testimony. So when he filed his opposition, he tried to attach the monitor's reports. And then after filing his opposition, he filed a letter on the docket saying that he had realized that the monitor's reports were not admissible under the statute. He was anticipating that the deputy monitor was going to be able to testify to the same information that was in the monitor's reports. So there's a question of whether he sort of adequately made his record there. You know, he could have at that point, when he realized he didn't have the information that he needed, he could have sought further discovery or taken any one of other steps rather than just try to call the deputy monitor without taking any other steps at that point. But in any event, the fact that his claim has been dismissed, I think, also goes to the appellate jurisdiction point. So our view is that this Court lacks appellate jurisdiction over this appeal. It does the merits here may ultimately, now that his claim has been dismissed and he has to seek reinstatement of his claim, the merits, this Court's resolution of the merits, may ultimately have no bearing on Coulson's separate case. And so that goes directly to the interest in avoiding piecemeal appeals and judicial efficiency that Your Honors were just discussing. I thought your point also was that the matter could be taken up on appeal in another case. Exactly. So one requirement for the appeal to fall within the collateral order doctrine is that he has to show that it would be unreviewable on appeal from a final order. And we say that he has not shown that. His argument is, as you heard, and it's in his papers, too, that it's finalized in the Nunez case. Obviously, it applies. There's nothing left to be done in the Nunez case. Why is that not the proper analysis? So we think this Court should follow its holding in Barrick, which says that when there's an order on a discovery-related order made by a judge in the same circuit, that this Court lacks jurisdiction to review that order if the main proceeding is still ongoing. And I would just point out in response to Your Honor's question earlier, the appeal from order was filed on the docket in Coulson's case, and that's at ECF number 213 on the docket in his case. So just because it was decided by a separate judge in a separate action shouldn't alter the legal analysis? That is exactly what this Court said in Barrick, and he has not offered any basis on which to distinguish that case from this one. And again, it is entirely possible that he attempts to reinstate the claim that has now been dismissed, and he's unable to reinstatement for a reason unrelated to this testimony, and then the issue will not have any bearing on his case. He said he's concerned that if they didn't do this now, it would be waived. If they lose the trial and the whole case goes up on appeal, he said he's not going to argue that he can't then raise this decision in his appeal of the case overall. He's not going to argue that, right? So our view is any issues that are— Although I believe it's 22. You're arguing no jurisdiction now, and then at the end of the case, if he says that Judge Swain's order was wrong, the city can't argue that he waived it, right? Well, our position is that there may be reasons to affirm the dismissal of his claim at summary judgment. His claim was dismissed. If he tries to appeal that dismissal at any point down the road, the city's going to raise all the arguments available to it as to why. I'm not saying that you can't say it wouldn't have mattered if he had those reports or that testimony, but to the extent that it does matter, you're not going to argue that he should have brought it sooner. He should have brought the challenge to the order sooner, right? Right, right. His argument that we were going to argue that it was waived because he didn't raise it earlier doesn't go anywhere. And then I will just turn to the merits since they overlap with the analysis of 1292A1. So even if this Court reaches the merits, this Court should affirm the district court's straightforward reading of the consent judgment, which relies on the bar on the monitor's testimony in unrelated cases and the provision extending the same access rights and confidentiality limitations that apply to the monitor to the monitor staff. That phrase clearly encompasses the bar on testifying in other cases. Wouldn't that argument be better made if the monitor hadn't been named specifically in the order? You know, the monitor being the whole office of the monitor as opposed to the particular monitor. I think that the fact that the monitor is named in the consent judgment is neither here nor there because regardless of whether someone was named to be the monitor, the consent judgment still says that monitor may hire qualified staff to assist him in performing his duties under the agreement, and his staff must be subject to the same access rights and confidentiality limitations as the monitor, making clear, you know, if the monitor decides that he needs assistance, if he needs to hire a team to assist him in fulfilling his duties under this agreement, that team will be subject to the same rights and limitations that are present in this agreement. It's clearly evident that that's what the district court had in mind, although she didn't expressly say so. So she did explain it. There was a motion for reconsideration, and then at that point the district court issued a more detailed order giving her explanation for her reading of the consent judgment, and that is the explanation that she gave. And I would also point to the fact that not only does the consent judgment bar testimony in unrelated cases, it also generally bars the monitor from speaking publicly about the department's compliance with the agreement. There's no reason why the monitor's testimony at trial wouldn't also constitute a public statement. So I think, you know, whichever way you look at it, there's no reason that the consent judgment would have intended to distinguish the monitor from the monitor's team in this way, given that it's laid out. The question is whether the public statement provision would also apply to the staff too, right? Well, I guess just if there's any question as to whether testifying in an unrelated case is a confidentiality limitation, then. His main argument with respect to the district court's reasoning is that confidentiality limitations should be limited to the agreement because it comes in a section that talks about the agreement. That's really, to me, the key issue, right? I'm sorry. So the question of whether confidentiality limitations. Confidentiality limitations should apply to testimony because it doesn't reference testimony. And that statement about confidentiality limitations is in a section with this preceding sentence, which the district court didn't cite, talks about a confidentiality agreement. And there's nothing in the confidentiality agreement about testimony. And therefore, confidentiality limitations should not be interpreted as broadly as the district court did. So may I respond? That was the friend well backed out again. I understood. So first I would say that if the intent was to have the staff also join the confidentiality agreement, that would be what the consent judgment said. It would say the monitor and his staff will enter into a confidentiality agreement. Instead, it says more broadly, the staff will be subject to the same access rights and confidentiality limitations. And that refers to the information that the monitor and his staff has increased access to and then what the monitor and his staff may do with that information once it has it. And one of the things that it may not do is testify about it in other litigation. And that's why it also constitutes a confidentiality limitation. I asked Mr. Greenberg what the purpose of the provision was. He said there's nothing in the record. Assuming we found ambiguity and got to that type of analysis of what the purpose was, is there anything in the record regarding the purpose of that provision? Well, generally there is a provision that says the purpose of hiring a team is to assist the monitor in fulfilling its duties under the consent judgment. So that is sort of a general statement of purpose. Not testifying. That was really my question. I think that the fact that there are multiple provisions going directly to whether information gathered under the monitorship can be used in litigation, in separate litigation against the same defendant, indicates that its purpose was exactly that, to avoid, to prevent information that the monitor now has access to under this agreement from being used in other cases against the city. And that is exactly what this litigant is trying to do here, is trying to sort of get around all of those different provisions that go to that same thing. So the bar on testifying, the fact that the monitor reports themselves are inadmissible in other litigation, the fact that there's also a bar on appearing as a non-testifying expert. And so the monitor, its consent judgment is sort of filled with provisions going to this same purpose, and I think that this Court can conclude from that that that was the purpose of those provisions. All right. Thank you. Thank you. All right. Mr. Greenberg, you have three minutes. Thank you, Your Honor. I'd like to address some of the points in not the same order. So starting with the confidentiality portion of that. The problem with trying to say that the confidentiality limitation somehow encompasses this is that it requires you to speculate what confidentiality means. There's nothing in the agreement that outlines what is confidentiality other than this provision. So you would have to say, well, I view this paragraphs 28, 27, and 25 as confidential because I think that that's confidential. Even though there is a set meaning of confidential, that's just my view of the world. That's not how one can interpret the contract. You have to look at the words as they are written. And given the fact that those two sentences are together, you have to look at what they actually defined as confidential, which is in the confidentiality agreement and which expressly says that things that are in the public domain or which the monitor finds out from another source is not confidential. So it would require you to both come with a new definition of confidential and ignore the thing that is actually incorporated into it. Going to the next point in not the same order, mootness, unless Your Honors have any questions. With mootness, that argument is a bit of a red herring in my view because under ExxonMobil, it's not moot unless there is a, if there is a possible remedy available, let alone a substantial possibility of it. In this case, the deputy monitor has made statements on the record that go directly to the Monell claim here. She has said things about what the city's policies, practices, and customs are regarding excessive use of force and how they are not in keeping with the law. In addition, you have these monitoring reports which are damning and which, as the deputy monitor, she would be, have knowledge of many of those, if not all of those facts. There is a virtually nil chance that the, that if the court reverses, that the motion for reconsideration won't be granted, which is exactly why Judge Clark wrote that in the footnote saying that she, in essence, inviting Mr. Colson to move to reconsider if this court reverses. The other point that I had was, just to address, was with regard to barrack, barrack is irrelevant to final judgment. If this is a final judgment, and it is since it can't be differentiated, it's, barrack is of no moment. Unless Your Honors have any other questions, I rest on that. You did that perfectly. Three minutes. Thank you, Your Honor. All right. Thank you to both of you.